[Cite as *State ex rel. Ames v. Portage County Bd. of Commrs.*, 2022-Ohio-2543.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO ex rel.
BRIAN M. AMES,

        Relator-Appellant,

- v -

PORTAGE COUNTY BOARD
OF COMMISSIONERS,

        Respondent-Appellee.

CASE NO. 2021-P-0112

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2020 CV 00273

## O P I N I O N

Decided: July 25, 2022
Judgment: Affirmed

*Brian M. Ames*, pro se, 2632 Ranfield Road, Mogadore, OH 44260 (Relator-Appellant).

*Victor V. Vigluicci*, Portage County Prosecutor, and *Christopher J. Meduri*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Respondent-Appellee).

MATT LYNCH, J.

{¶1} Relator-appellant, Brian M. Ames, appeals the judgment of the Portage County Court of Common Pleas finding that he engaged in frivolous conduct and awarding attorney fees to respondent-appellee, Portage County Board of Commissioners. For the following reasons, we affirm the judgment of the court below.

{¶2} The course of the underlying proceedings is as follows:

On April 27, 2020, Ames filed a Verified Complaint in Mandamus, Declaratory Judgment, and Injunction against the Board of Commissioners, alleging two violations of R.C. 121.22 [the Open

Meetings Act] arising from a meeting held on April 9, 2020: Considering in an Executive Session a Subject Matter Not Specifically Excepted by Law (Count 1) and Failure to Keep Full and Accurate Minutes (Count 2).

The matter was tried by the court on June 15, 2021, at which the following persons testified: Janet Kovick (director of human resources); Sabrina Christian-Bennett (member of the board of commissioners); Vicki Kline (vice president of the board of commissioners); Kathleen Clyde (president of the board of commissioners); and Amy Hutchinson (clerk of the board of commissioners). During the course of the April 9 meeting, a motion was made and approved to move "into executive session to consider the employment of a public employee" (in the words of the meeting minutes). The three Commissioners along with Kovick, Chris Meduri (an attorney), and Gene Roberts (water resources department director) participated in the session. A "succession plan," developed by human resources, was discussed according to which the Deputy Director of Portage County Water Resources would be transitioned or promoted to the newly created position of Interim Director. The offer of the new position was to be made on April 15. The performance of the Deputy Director was discussed, in particular, her leadership skills demonstrated during the pandemic. After the executive session concluded, the following journal entry was adopted: "After exiting Executive Session, the Board of Commissioners agreed to stay the succession plan for the Water Resources Director for the duration of the public health emergency."

*State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 2022-Ohio-105, 183 N.E.3d 633, ¶ 2-3.

{¶3} On June 24, 2021, the trial court ruled that the Board had not violated R.C. 121.22.

{¶4} On June 25, 2021, a Motion for a Hearing to Determine Issue of Frivolous Conduct was filed on behalf of the Board, requesting "that a hearing be set to provide Relator due process and for [the] Court to determine whether the filing of this action and/or the assertions of the claims in this action constitute frivolous conduct, and upon a finding of such conduct, for this Court to award the Respondent its reasonable attorney fees and

2

Case No. 2021-P-0112

any other reasonable expenses incurred in this action."

{¶5} The Motion was based on division (I)(2)(b) of R.C. 121.22 which provides:

> If the court of common pleas does not issue an injunction pursuant to division (I)(1) of this section and the court determines at that time that the bringing of the action was frivolous conduct, as defined in division (A) of section 2323.51 of the Revised Code, the court shall award to the public body all court costs and reasonable attorney's fees, as determined by the court.

Although the statute does not provide for a hearing, this court has held that due process requires one be held. Accordingly, a trial court is required, upon the denial of injunctive relief, "to notify a party of its intention to find his or her conduct frivolous, set a date for a hearing, and conduct that hearing so the party can defend against the potential consequence of being deprived of his or her property in the form of a fee award." *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 11th Dist. Portage No. 2018-P-0036, 2019-Ohio-3237, ¶ 22.

{¶6} "Frivolous conduct" is statutorily defined as the conduct of a party to a civil action that satisfies any of the following:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

R.C. 2323.51(A)(2)(a).

3

Case No. 2021-P-0112

**{¶7}** The Board's Motion for a Hearing did not describe or otherwise identify the conduct claimed to be frivolous, but quoted divisions (A)(2)(a)(ii) and (iii) of the foregoing statute.

**{¶8}** On September 16, 2021, the Board filed a Brief Concerning the Hearing to Determine the Issue of Frivolous Conduct. The principal argument advanced in the Brief was that Ames' Complaint was frivolous under R.C. 2323.51(A)(2)(a)(ii), and secondarily that division (iii) was implicated.

**{¶9}** Attached to the Brief were emails sent by Ames to Christopher Meduri, counsel for the Board, on August 13, 2021. In them, Ames indicates that he filed the lawsuit at the request of one of the County Commissioners who opposed the staying of the succession plan. Ames further disclosed that the Commissioner in question arranged for the Complaint to be notarized so that it could be filed as soon as possible.[1] Based on these emails, the Board argued that Ames did not file the lawsuit for a legitimate purpose under the Open Meetings Act:

> The OMA is essentially a public rights statute. Like public rights statutes for which representative standing exists the people are the "real party in interest." * * * Invoking the judicial process remains a serious matter. The OMA should not be used as a "pretext" to bring a lawsuit (under the R.C. 121.22) when the person does not like the policy decision of the board. This is an abuse of the court's process. The pro se litigant in this case now alleges that a commissioner wanted him to file this case, the same commissioner that voted against the succession plan. The Relator is the responsible party because he filed the case under the "any person" standing provision of the OMA; however, there is no rational basis supported by legal authority warranted under existing law, nor is there a rational basis supported by at least some type of case law that would support a

---

1. The text of one of the two emails attached to the Brief reads: "Has Sabrina Christian-Bennett ever told you that she asked me to file case 2020CV00273? Has she told you that she was so desperate to have it filed as quickly as possible that she arranged for one of her closers to notarize it in her Brimfield office so that I would not have to wait for an appointment at a bank? You've been played, fool! Keep your eyes on the news."

4

Case No. 2021-P-0112

good faith argument for the extension of existing law or the establishment of new [law].

Respondent's Brief Concerning the Hearing to Determine the Issue of Frivolous Conduct at 42-43; *also* at 10 ("the OMA and the Court should not be exploited by the filing of an OMA claim * * * for which, as Relator himself now states, another person wanted him to file as soon as possible"), 23 ("the OMA should not be used as a weapon when there is a policy dispute among members of the board"), and 29 ("[t]his is a case of using the OMA for a purpose it was not intended to be used for").

{¶10} On October 12, 2021, a hearing was held to determine the issue of frivolous conduct. There is no transcript of this hearing in the record before this court.

{¶11} On October 26, 2021, the trial court issued a Judgment Entry determining that Ames' lawsuit constituted frivolous conduct:

> Upon reexamination of Mr. Ames' original complaint and evidence relating to it the Court finds the allegations to be trivial, unfounded and brought for an improper purpose. The action is based upon political opposition to a decision of the majority of the Board to take certain personnel action. The evidence reveals the action was filed by Mr. Ames at the direction of a member of the Respondent Board. This constitutes a violation of R.C. 2323.51(A)(2)(a)(i), improper purpose. The OMA claim was not made in good faith. The purpose of the statute is to ensure openness and transparency in the manner in which the government conducts business. It is not a tool to litigate policy or political disputes.
>
> In addition, the Court finds Relator's claims to be frivolous because they are unwarranted under existing law and cannot be supported by a good faith argument for the establishment of new law. (See: R.C. 2323.51(A)(2)(a)(ii).) Specifically here the Court refers to a plain reading of the Board's minutes of 4-9-20 stating the purpose of executive session was to consider the employment of a public employee. The Board's subsequent action to stay a human resource department's succession plan relates directly and clearly to the stated reason for the executive session.

5

Finally the Court finds from the evidence [that] Respondents are entitled to attorney fees in the amount of $330.98; costs to be paid by Relator.

{¶12} On October 28, 2021, Ames filed a Notice of Appeal. On appeal, he raises the following assignments of error:

[1.] The trial court erred by finding, sua sponte, a violation of R.C. 2323.51(A)(2)(a)(i), improper purpose, thereby denying Mr. Ames his rights to due process of law under the Fourteenth Amendment of the United States Constitution.

[2.] The trial court erred by finding Relator's claims to be frivolous pursuant to R.C. 2323.51(A)(2)(a)(ii) because they are unwarranted under existing law and cannot be supported by a good faith argument for the establishment of new law.

{¶13} A court of appeals "will not reverse a lower court's decision on whether to award sanctions under R.C. 2323.51 absent an abuse of discretion." *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11. "[T]he trial court's factual findings," however, "will not be disturbed if they are supported by competent, credible evidence." (Citation omitted.) *Id.* "All legal questions are reviewed de novo," while "'[t]he ultimate decision whether to impose sanctions for frivolous conduct * * * remains wholly within the trial court's discretion.'" (Citation omitted.) *F.D. Johnson Co. v. JC Mechanical Heating and Cooling, LLC*, 11th Dist. Lake No. 2019-L-163, 2020-Ohio-3931, ¶ 8.

{¶14} Under the first assignment of error, Ames asserts that his rights to due process under the Fourteenth Amendment of the United States Constitution were violated on the "undisputed" grounds that "the Board at no time sought a violation of R.C. 2323.51(A)(2)(a)(i) [improper purpose]" and the trial court gave "no notice of [its] intention

6

to find Mr. Ames' conduct frivolous pursuant to R.C. 2323.51(A)(2)(a)(i)." Brief of Relator-Appellant at 21.

{¶15} The central concern of the due process clause is the "fundamental fairness of government activity." (Citation omitted.) *Corrigan v. Testa*, 149 Ohio St.3d 18, 2016-Ohio-2805, 73 N.E.3d 381, ¶ 17. It is "'not a technical conception with a fixed content unrelated to time, place and circumstances,'" but, rather, an enterprise that seeks to "discover what 'fundamental fairness consists of in a particular situation * * *.'" (Citation omitted.) *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 80. At a minimum, "due process requires that persons whose property interests are jeopardized by the filing of legal proceedings be given notice reasonably calculated, under all the circumstances, to apprise those persons of the pendency of the action and afford them an opportunity to present their objections." *Galt Alloys, Inc. v. KeyBank Natl. Assn.*, 85 Ohio St.3d 353, 357, 708 N.E.2d 701 (1999), syllabus.

{¶16} We find no deprivation of due process. Ames was duly apprised of the potential grounds for a finding of frivolous conduct by the Board's forty-five-page Brief Concerning the Hearing. This Brief quoted all the statutory grounds, including improper purpose under R.C. 2323.51(A)(2)(a)(i), for a finding of frivolous conduct.[2] It then set forth in abundant detail the ways in which Ames purportedly violated these standards. Civ.R. 7(B)(1) ("[a] motion * * * shall state with particularity the grounds therefor"). Specifically, it claimed that Ames' reasons for filing the lawsuit were pretextual and an

---

2. We note that, even if the statute had not been quoted, Ames would be charged with knowledge of its contents. *Seagraves v. Seagraves*, 125 Ohio App.3d 98, 103, 707 N.E.2d 1165 (2d Dist.1997) ("[a] litigant is on notice, as a matter of law, that attorney fees may be awarded as a sanction for frivolous conduct in litigation [under] R.C. 2323.51").

7

abuse of the court's process, that he was exploiting the Open Meetings Act for ulterior motives, and that he was using the Act for an unintended purpose. It is true that the Board did not expressly request relief under (A)(2)(a)(i) but rather stated that "[t]he principal focus in this matter will be (A)(2)(a)(ii) of 2323.51." But neither did the Board explicitly disavow relief under division (A)(2)(a)(i). When the trial court made a finding of improper purpose, its reasons for doing so were those set forth in the Board's Brief Concerning the Hearing. Ames was not only on notice of the potential grounds for a finding of frivolous conduct but was afforded ample opportunity to object to them as well. *S & S Computer Sys., Inc. v. Peng*, 9th Dist. Summit No. 20889, 2002-Ohio-2905, ¶ 28 (where the motion "clearly alleg[ed] that S & S and/or its counsel engaged in frivolous conduct by filing and pursuing its claim * * * in the name of a corporation [they] knew lacked capacity to sue[,] [t]here was no additional requirement that the motion identify * * * the subsection [of R.C. 2323.51] under which [the movant] intended to proceed"); *Surface v. Grottlla-Kennedy*, 2d Dist. Clark No. 2002-CA-80, 2003-Ohio-3978, ¶ 18-19 ("R.C. 2323.51 * * * does not specify any particular form for the motion" and a motion "list[ing] all the fees allegedly incurred due to the allegedly frivolous conduct" provides "ample notice of the 'operative facts' supporting the motion").

{¶17} The first assignment of error is without merit.

{¶18} Under the second assignment of error, Ames argues that the trial court erred by finding his claims frivolous pursuant to R.C. 2323.51(A)(2)(a)(ii) in that they were unwarranted under existing law and could not be supported by a good faith argument for the establishment of new law.

{¶19} The underlying dispute involved the Board's decision to enter "executive

8

session" on April 9, 2020, to discuss "the employment of a public employee." Pursuant to the Open Meetings Act, a public body may only enter executive session for certain purposes, including "[t]o consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee." R.C. 121.22(G)(1). Regarding the substance of the executive session, the trial court made the following finding: "During this private meeting the evidence shows that the commissioners discussed the employee's job performance, the COVID pandemic (as it relates to the employee's duties), and the county's managerial succession plan, (as it relates to the employee and her possible promotion)." Ames' position was that the use of the word "employment" did not reflect the true purpose of the executive session and that one or another of the other statutorily approved purposes would have more properly reflected the substance of the session. *Ames*, 2022-Ohio-105, at ¶ 11. According to Ames, the word "employment" should be limited to the hiring of new employees, or, stated otherwise, the use of the word "employment" was insufficient to indicate the purpose for entering executive session. In finding Ames' conduct frivolous the trial court found that the "Board's subsequent action to stay a human resource department's succession plan relates directly and clearly to the stated reason for the executive session [i.e., the employment of a public employee]."

{¶20} Ames appears to concede that, if interpreted broadly (as he maintains this court did in *Ames*, 2022-Ohio-105), the term "employment" fairly describes the substance of the executive session. Rather, his position is that a narrow interpretation of "employment," limited to the hiring of a new employee, is supported by the canons of statutory interpretation and that the broad definition adopted by this court established new

9

law.  We disagree.

{¶21}  In support, Ames cites the following principles of statutory construction:

> Venerable principles of statutory construction require that in construing statutes, courts must give effect to every word and clause in the statute.  *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18, citing *Bole v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, ¶ 21.  Courts must read words and phrases in context and construe them in accordance with rules of grammar and common usage and may not restrict, constrict, qualify, narrow, enlarge, or abridge the General Assembly's wording.  (Citations omitted.)  *Id.*  A court should avoid a construction that renders a provision meaningless or inoperative.  *Id.* at ¶ 19, citing *State ex rel. Meyers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St.3d 367, 373, 116 N.E. 516 (1917).  Furthermore, when a statute's language is clear and unambiguous, courts apply the statute as written, giving effect to its plain meaning.  (Citation omitted.)  *Id.* at ¶ 20.

*State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 2019-Ohio-3729, 144 N.E.3d 1010, ¶ 53 (11th Dist.).

{¶22}  In common usage, the term "employment" encompasses the state of being employed as well as the inception of that state ("the hiring").  The term is not defined statutorily for the purposes of the Open Meetings Act and there is no case law supporting the restriction, qualification, narrowing, and/or abridgment of that definition urged by Ames.  Instead, Ames contends that unless "employment" is given a limited construction, the other statutory purposes for entering executive session (appointment, dismissal, discipline, promotion, demotion, and compensation) are rendered meaningless or inoperative.  In reference to this court's decision on the underlying appeal, *Ames*, 2022-Ohio-105, he asserts that "[n]o reasonable attorney" would have anticipated this court's holding "that the terms appointment, employment, dismissal, discipline, promotion, demotion, and compensation are not mutually exclusive but, to a certain extent, are

10

capable of describing similar conduct." Brief of Relator-Appellant at 25. On the contrary, Ames' position is untenable and would render the operation of the statute impracticable. While Ames suggests that it is unreasonable for these terms to be capable of describing similar conduct, he proffers no satisfactory alternatives. Assuming, arguendo (since there is no actual authority to support the assumption), that "employment" as used in R.C. 121.22(G)(1) is limited to hiring a new employee, then a problem arises as to how the other statutory purposes are to be construed. Is "appointment" given its plain or common meaning or does it too have a restricted meaning as to distinguish it from employment and promotion? The same question applies to the other statutory purposes for holding executive session. If they are not given an ordinary construction, what technical definitions should they be given and on what authority since they are not defined statutorily?

{¶23} Ames further contends that this court's holding in *Ames*, 2022-Ohio-105, "established new law * * * by determining that there was no need to identify more than one purpose." Brief of Relator-Appellant at 25. He describes this as a significant departure from this court's holding in *Ames*, 2019-Ohio-3729, where we held that R.C. 121.22(G)(1) "mandates that the Board specifically state in its motions and votes the particular permitted purpose or purposes that the Board reasonably intends to discuss during executive session." *Id.* at ¶ 3. Contrary to Ames' position, this court did not establish as a matter of law that there was no need for a public body to identify more than one purpose for entering executive session. Rather, we held that there was no need to identify more than one purpose in this particular case. *Ames*, 2022-Ohio-105, at ¶ 13 ("[a]s the sole focus of the executive session was whether to offer the position to the

11

Case No. 2021-P-0112

Deputy Director, there was no need to identify more than one purpose for holding the executive session"). Moreover, in *Ames*, 2019-Ohio-3729, the so-called "laundry list" case, we addressed the Board's prior practice of listing *all* the possible purposes for an executive session under R.C. 121.22(G)(1) each time it went into executive session. We interpreted the statute allowing a public body to identify a particular "purpose *or* purposes" for entering executive session dependent upon what the body intended to discuss. *Id.* at ¶ 3. There is no conflict between the two cases and Ames' prior appeal of this case did not result in new law.

{¶24} Inasmuch as Ames has not presented a coherent or reasonable argument for his construction of the term "employment," his conduct was frivolous as neither warranted under existing law nor supported by a good faith argument for the establishment of new law.

{¶25} The second assignment of error is without merit.

{¶26} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas finding that Ames engaged in frivolous conduct is affirmed. Costs to be taxed against the appellant.

CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.

12